## NORTON *v.* AILOR, Administrator.

1. HUSBAND AND WIFE. *Support of children.* If a man marry a woman with infant children, and he take them into his family, and treat them as part of his family, the law implies an obligation on his part to support them.

2. SAME. After the death or majority of one of such children, without promise to pay, the step-father can not recover from its guardian for its support and maintenance during its minority.

FROM UNION.

Appeal from the Chancery Court at Maynardsville. W. B. STALEY, Ch.

A. S. PROSSER for complainant.

WASHBURNE & TEMPLETON for defendant.

FREEMAN, J., delivered the opinion of the court.

Reuben Huchison died in the Federal army in 1863, leaving a wife and four children, the youngest named

Parley, the intestate of present defendant. She died February, 1882, having become an imbecile when about six years old, some years after the marriage of the mother with complainant, which took place in 1866.

The father left a small tract of land worth from $300 to $500, and a small amount of personalty. On the marriage, complainant moved to this place on which the wife resided, took charge of the family, this child included, and so they lived, until the death of Parley, the youngest. In October, 1882, this bill was filed to recover from her administrator compensation for his services in taking care of this child of his wife. The chancellor dismissed the bill, which has been recommended for affirmance by the Commission, and exceptions filed.

The exceptions put in issue the propriety of the chancellor's decree, based on the whole record, and therefore need not be specifically stated.

The bill charges that Sharp, a former guardian, had promised to pay for taking care of his ward. This guardian was removed in 1878, having been appointed in 1871. Defendant was then appointed in his place, and so continued until her death. It is also charged that respondent promised to pay reasonable board for the ward, but had only paid $175. $100 per annum is claimed in the bill as due complainant, less the $175 paid.

The answer of respondent sworn to in response to the bill, denies that the former guardian had promised as charged, and calls for proof, and with the same explicitness denies that he ever promised to pay any

Norton *v.* Ailor.

sum further than the $175 paid. He further pleads statute of limitations of six years as to all sums due before that period.

There is no admission of liability as argued in the answer, but a definite denial. There is no proof of any such contracts or promises as charged, and so the case stands on the facts, dependent on the question, whether the law raises a liability under the circumstances of the case.

It is certain the complainant married the mother, being poor himself, owning only a horse probably, at the time. That the mother having a home, belonging to herself and children, was living on the same at the marriage, and complainant went on the farm and remained. The mother had the four children, including Parley. She became insane some years after the marriage. Complainant kept the children in his family as his own, and treated them as such. The insane child was treated precisely as a child of his own would have been treated, in all probability, had such a child become unfortunate as she did.

Her guardian received money for her from the United States government, but no charge was made for board, nor any demand of payment, from 1871 to 1878, after that period, when respondent had been appointed as guardian, it seems some such claim was made, and under it $175 paid, which he says was all he ever promised to pay, and we can but conclude, all the other party demanded or expected to receive. After the death of the child, his views we suspect changed, and hence this suit.

The law governing this case is thus stated by this court in *Maguinay* v. *Saudek*, 5 Sneed, 147–8, "The husband is not bound by law to maintain a child of the wife by a former husband. But, if he receives such child into his own house, he is then considered as standing in *loco parentis*, and is responsible for the maintenance and education of the child so long during its minority as it lives with him, for by so doing, he holds the child out to the world as part of his family." It is added: "This is precisely the obligation of the father as respects the support of his minor child."

The same principle is laid down in Wait's Actions and Defenses, vol. 5, page 51, where it is said: "The law as now understood, holds him liable only when he takes such children into his own family and keeps them as part thereof." See cases cited.

This is precisely the case we have in this record. It cannot be held, that while he had thus taken upon himself the legal obligation to support these children, that at the same time there was also a right on his part, with no promise to that effect executed from any one, to pay for it, that he at the same time acquired the right to demand to be reimbursed out of the estate of the child. This would be to impose a legal duty, and at the same time release the party practically from it, by requiring repayment of any expense incurred in its performance.

While it is conceded, as argued by counsel, that the performance of this duty may be a good consideration for a promise on the part of the child after

Norton *v.* Ailor.

it arrives at years of maturity, this excludes the idea of such liability before such promise, if such liability existed, there would be no need for the after promise. The cases referred to, 2 Mass., 415, and 4 Mass., 675, as we understand them, do not decide the contrary.

It is also well settled law, that if a father is not able to support and educate his children in a manner suitable to their fortune or expectation, an allowance will be made by a court of chancery out of the infant's estate for those purposes: See Wait's Actions and Defenses, vol. 5, page 52.

We have not that case before us. On the contrary, the case is a claim made after the death of the ward, and fifteen years after the service commenced, and is specifically put on the ground of a contract and agreement on the part of the guardian to pay; no application to have the fund in the hands of the ward appropriated to expenses was ever made in her lifetime except for the $175, and that paid, no more claimed or promised.

Under these circumstances, we think the chancellor was correct in dismissing the bill, and Referees correct in their report, and the same will be affirmed with costs.